## Case No. 1,380.

### BEYER et al. v. The NURNBERG.

[3 Hughes, 505.] [1]

Circuit Court, D. Maryland. March, 1879.

COLLISION—VESSEL AT ANCHOR—LOOKOUT—ANCHOR-LIGHTS.

A vessel lying at anchor in a fairway or roadstead of a navigable water, with no anchor-lights burning, and but one lookout, and he asleep, at the time a steamer runs into her by no fault of the steamer, is solely in fault and must bear the loss from the collision.

[Appeal from the district court of the United States for the district of Maryland.

[In admiralty. Libel by Morton Beyer and others, owners of the bark Azow, against the steamer Nurnberg, for collision. Decree for respondent. Libellants appeal. Affirmed.]

BOND, Circuit Judge. This cause standing ready and having been submitted for hearing, and the proceedings and evidence in the cause and the arguments of the proctors, for the respective parties having been read, heard, and duly considered, the circuit court of the United States for the district of Maryland hereby finds the following facts and conclusions of law, upon which it renders its decree, viz:

Facts Found by the Court.

1st. Between twelve and one o'clock on the night of the 7th, or morning of the 8th, of May, 1877, a collision occurred between the steamer Nurnberg and the bark Azow in the Chesapeake bay.

2d. At the time of said collision, the said bark Azow was anchored in a roadstead or fairway of the Chesapeake bay in the usual path or track of steamers and large sail vessel coming to or going from the port of Baltimore.

3d. An anchor-lantern had been lighted and properly hung on said bark Azow at an early hour of said night, but said light had gone out before said collision, and at the time of said collision no anchor-light nor other light

---

[1] [Reported by Hon. Robert W. Hughes, District Judge, and here reprinted by permission.]

was on said bark, and said bark could not herself be seen by them on board of said steamer at a sufficient distance to enable them to avoid her.

4th. Only one man was on duty as an anchor-watch on board said bark Azow at the time of said collision, the entire crew having been on duty all the night before. All except the anchor-watch were asleep below, and the anchor-watch himself was asleep at the time of the collision.

5th. No torchlight or other light was exhibited on said bark, or other warning given on board of her as said steamer approached.

6th. Said steamer had all her regulation lights burning brightly. They were all visible at the respective distances required by the act of congress and the usages of the sea, and they might all have been seen by a watch on lookout on board of said bark in time to ward off said steamer and prevent a collision.

7th. Said steamer, at the time of said collision, was proceeding at less than her usual rate of speed, on her proper course up the Chesapeake bay, to the port of Baltimore.

8th. There was nothing in the character of the night or in the locality of said collision to have rendered it imprudent or improper for said steamer to proceed at her customary rate of speed if she had chosen to do so.

9th. At the time of said collision said steamer was in charge of a competent, experienced, and skillful pilot; said pilot, her master, and second officer, were on the bridge navigating said steamer, and diligently engaged in looking out. A full sea-watch, consisting of nineteen men and officers, were assigned to their respective duties; twelve of her crew were on watch forward of the bridge. Two able seamen were assigned to and engaged in the special duties of lookouts. They were stationed forward; on the upper deck, as near as possible to the bow, one on the port, one on the starboard, and all in the positions most advantageous for the discharge of their respective duties. All of these officers and men diligently and skillfully discharged their respective duties from the time said steamer left her anchorage, a little after twelve o'clock on the night in question, in charge of the pilot, up to the moment of the collision. They saw lights on board of other vessels, in motion and at anchor, and avoided and passed them at safe distances. Shortly before said collision two anchor-lights on board of other vessels, one nearly ahead of said steamer and the other a little on her port, about three miles off, were reported by the lookouts on board of said steamer, and both of them were distinctly seen by the pilot and officers on the bridge. When the steamer was drawing near to the said vessel ahead, the pilot and officers on her bridge looked to see whether there was any thing in the way to prevent them from porting for the purpose of clearing her. None of them seeing anything in their way, the said steamer was ported, slightly alter-

ing her course so as to clear said vessel ahead. Before she had got well on her new course the two lookouts saw the bark Azow without any lights on her, and simultaneously, in a sharp and frightened voice, cried out: "Ship right ahead." The order was instantly given to stop said steamer, and put her helm hard aport. Both of these orders were instantly obeyed. But before said steamer could be stopped, and before her machinery could be reversed, or her course materially altered, she struck said bark with such force as to cut into and sink her.

10th. Said collision was caused entirely by the fault of those on board of said bark Azow, and everything was done on board of said steamer Nurnberg which have been done to avoid it.

### Conclusions of Law.

Said collision having been caused entirely by the fault of those on board of said bark Azow, and everything having been done which could have been done on board said steamer to avoid the same, the libellants, owners of said bark, are not entitled to recover from the said steamer, or from the stipulators. damage therefor.

### Decree.

It is thereupon, this fifth day of March, 1879, adjudged, ordered, and decreed that the decree in the above cause be, and the same is hereby affirmed, and that the libel be, and the same is, hereby dismissed, with costs to the appellee in both courts.